## Roadarmel's Estate.—Haymaker and Donald's Appeal.

1. A father largely indebted conveyed land to his sons who had no property, taking from them a bond for the consideration payable in two years; creditors pressing him, shortly after, he assigned the bond for a payment in cash and a debt due by him to the assignee. *Held,* that the sale was an actual fraud against creditors and did not pass the land to the vendees.

2. Judgment on the bond was recovered by the assignee against the sons. *Held,* although the assignment may have been bonâ fide, and without notice of the fraud, the judgment was not a lien on the land.

APPEAL of Elizabeth Haymaker and Keziah Donald, from the decree of the Orphans' Court of *Westmoreland county*, distributing the estate of Peter Roadarmel, deceased.

Peter Roadarmel, the decedent, died about the 10th of October 1860, intestate, unmarried and without issue, seised of real estate.

Daniel Roadarmel, a brother, was one of his heirs at law.  At the time of Peter's death, Elizabeth Haymaker and Keziah Donald held a judgment, recovered by them in 1844, against Daniel and Adam Turney, for $2352.59.  On the 13th of October 1860, Daniel conveyed to his sons Richard and Samuel, all his interest in Peter's estate; the consideration named in the deed was $800, which was not paid in money, but a bond given by the sons to their father for that sum, payable in two annual payments; the bond was assigned to A. M. Brown, November 21st 1860, in consideration of $500 paid in cash, and a debt of $300 due from Daniel to Brown; judgment was recovered on this bond to November Term 1860.

Elizabeth Haymaker and Keziah Donald issued a scire facias on their judgment against Daniel and Adam Turney, and obtained judgment, December 10th 1860, for $4145.26.

The real estate of Peter was sold by order of the Orphans' Court, the sale confirmed August 19th 1861, and an auditor was appointed by agreement "to distribute the fund, with directions also to inquire, amongst other things, whether Daniel Roadarmel, a brother of Peter Roadarmel, deceased, was or was not indebted, and the amount of his debts, and whether a deed made by him to his sons Richard C. and Samuel D. Roadarmel, dated 13th October 1860, for his interest in his brother Peter's real estate, was or was not fraudulent and void as against his creditors; and whether the same was not made for the purpose of hindering and delaying his creditors; and to annex to his report the evidence taken by him in the premises, and his opinion thereon."

The claimants of Daniel's share of the fund were, A. M. Brown, assignee of the bond of the sons to the father; the sons, for any balance after paying the bond; and Elizabeth Haymaker and Keziah Donald, on the ground that Daniel's conveyance was fraudulent and void as to his creditors.

The auditor, by his report, found the facts above stated, and also that Daniel was largely indebted at the execution of the conveyance to his sons; that he had no other estate beside that conveyed, except a small quantity of personal property; and "that the sale was made by Daniel to his sons in order to secure to himself his share of his brother Peter's estate, and thus prevent his creditors from obtaining their just rights; and that his vendees were parties with him in his cunning, artifice and design.  The deed, therefore, was an *actual fraud,* consequently void, and did not vest any title in the vendees."  He further reported that Brown "can come in only as a creditor of Samuel and Richard, and if the sale of their father's interest to them was fraudulent and void, they have no claim on this fund, and Brown, for the collection of his judgment, will have to look for other property

to which they have a good title." He therefore awarded Daniel's share to Keziah Donald and Elizabeth Haymaker.

Exceptions to this report were filed by Brown: the report was reversed by the court, and Daniel's share ordered to be paid to Brown on his judgment.

Elizabeth Haymaker and Keziah Donald appealed from this decree and assigned it for error.

*H. P. Laird*, for appellants.—The assignee of a bond is in no better position than the assignor, and is subject to be defeated by whatever might defeat the bond in the hands of the assignor. The conveyance by Daniel to his sons was fraudulent *per se*. The bond for $800 on such security was not a valuable consideration, which is one both adequate in amount, and, if to be paid in future, adequate in responsibility.

*H. D. Foster* and *J. Armstrong*, Jr., for appellees.—A voluntary conveyance is a deed *without any valuable consideration;* if anything *valuable* passes between the parties it is a *purchase:* Jackson *v.* Peck, 4 Wend. 300 ; Shontz *v.* Brown, 3 Casey 129 ; Seward *v.* Jackson, 8 Cow. 430. The *adequacy* of the consideration does not enter into the question, and only becomes material to ascertain a fraudulent intent : Thomas *v.* Smith, 3 Whart. 401, 406 ; Smith *v.* Smith, 11 N. Hamp. 460.

To avoid a deed under the statute of Elizabeth, it must be shown that both parties to it intended the forbidden fraud : Towar *v.* Barrington, Brightly's R. 260 ; Magniac *v.* Thompson, Baldw. 344 ; Harrison *v.* The Academy, 12 Mass. 456 ; Bridge *v.* Eggleston, 14 Id. 245 ; Foster *v.* Hall, 12 Pick. 89.

A creditor has the legal right to secure himself by taking a conveyance of land, entering up a judgment, or by purchasing personal property. And such transactions are not fraudulent, although the parties contemplate that thereby the claims of creditors will be defeated : York County Bank *v.* Carter, 2 Wright 446 ; Covanhovan *v.* Hart, 9 Harris 495.

Where a sale is actually or constructively fraudulent, a bonâ fide purchaser without notice of the fraud is protected, and takes a valid title : Hood *v.* Fahnestock, 8 Watts 489 ; Thompson *v.* McKean, 1 Ashmead 129 ; Thompson *v.* Lee, 3 W. & S. 479 ; George *v.* Kimball, 24 Pick. 234 ; Deakers *v.* Temple, 5 Wright 234 ; Neal *v.* Williams, 18 Maine 391. A mortgagee is a purchaser : Lancaster *v.* Dolan, 1 Rawle 231 ; Mott *v.* Clark, 9 Barr 404. Such bonâ fide purchaser is protected under the statutes 13 and 27 Elizabeth, whether he purchases from a fraudulent grantor or grantee.

The opinion of the court was delivered, January 7th 1867, by

[Haymaker's Appeal.]

THOMPSON, J.—The validity of the bond in this case, and the lien of the judgment upon it, are very different things. The former may be the result of a fraudulent intent and combination to defraud creditors, and yet the parties be bound. There is no statute making it void as to them. It is only the parties intended to be defrauded who are to be protected against its binding force; and as no one will be allowed to allege his own turpitude, it remains binding between the parties and assigns. But if the property out of which it grew never passed, by reason of fraud or being a covinous sale, then there was no interest in the vendees to which the lien could attach until after the creditors of the vendor were satisfied. That was the case by the finding of the auditor, and I am at a loss to discover the grounds upon which the court below overruled the auditor in making the distribution he reported. By order of the court, and consent of the parties, he had full authority to pass upon the question of fraud in the alleged sale of Daniel Roadarmel to his two sons, of his undivided interest in the real estate of his brother Peter deceased. The report of the auditor, fully supported by the evidence, shows as flagrant a case of actual fraud against creditors in this sale as can be found in all the books. How, then, as against these very creditors are we, consistently with principle, to hold that it did pass to the fraudulent vendees the land, so as to be the foundation of valid liens in favor of their creditors? By reason of the fraud the property did not pass out of the reach of Daniel Roadarmel's creditors, and until they are satisfied there can be no pretence of claim by the creditors of his sons. Their rights are no higher than that of their debtors. They must claim through them, and not above or beyond them. By the finding of the auditor the sons had no title in the premises as against the creditors of their father, and any decision which denies that is wrong. But this is denied by the decree of the court below, without giving us the benefit of its reasons. If the decree was rested upon the idea that the appellee was an innocent purchaser of the bond of Samuel and Richard Roadarmel to their father, all that can be said in the absence of proof to the contrary is, that nobody is disputing his title to what he bought, but only that he is not entitled to property belonging to others to satisfy it. If, before he purchased the bond, he had inquired of the claimants of the fund whether they would claim it as against him a creditor of the sons, and they had assured him they had no claim against the father, no doubt his title would have been perfect; but this he did not. His case is not, however, within the principle relating to secret equities. It is not an equity against the bond at all that is asserted, it is only that the fund claimed by the appellee in payment of his judgment is not the money of the obligees. The

bond is not touched, nor is it the business of the appellants in this issue to impugn it in the least.

For these reasons we are of opinion the court below erred in overruling the auditor's report, and in decreeing the fund to A. M. Brown's payment in preference to the appellants' claim. The decree must therefore be reversed, and a decree confirming the auditor's report be entered; and the record is ordered to be remitted to the court below for that purpose.

> Decree reversed and set aside, and a decree to be made as indicated above; costs to be paid by the appellee.